# United States Court of Appeals

### For the Eighth Circuit

_____

No. 25-1574

_____

Anna Chernyy

*Plaintiff - Appellee*

v.

Monty Roesler, in his official capacity

*Defendant - Appellant*

John Doe, I, in his individual and official capacity

*Defendant*

Alan Moore, in his individual and official capacity; Saline County

*Defendants - Appellants*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 12, 2026
Filed: August 11, 2026

_____

Before COLLOTON, Chief Judge, SHEPHERD and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Corrections Officer Monty Roesler sexually assaulted inmate Anna Chernyy while she was in the Saline County, Nebraska jail. Chernyy sued Roesler, Sheriff Alan Moore, and Saline County under state tort law and 42 U.S.C. § 1983. The district court denied the defendants' motion for summary judgment. Moore appeals, arguing he is entitled to qualified immunity. The County argues that the claims against it are "inextricably intertwined" with those against Moore and asks us to resolve them as well. Reviewing *de novo*, we reverse and remand. *See Joseph v. Wheeler*, 144 F.4th 1111, 1113 (8th Cir. 2025) (standard of review).

We accept the facts that the district court specifically found or likely assumed, drawing all reasonable inferences in Chernyy's favor. *Livers v. Schenck*, 700 F.3d 340, 350 (8th Cir. 2012); *see also Johnson v. Jones*, 515 U.S. 304, 319 (1995) (when the district court does not state the facts it assumed, the appellate court "may have to undertake a cumbersome review of the record to determine [those] facts"). Sheriff Moore is in charge of the Saline County jail. He sets policies and makes operational decisions but does not directly supervise correction officers. The jail has a zero-tolerance sexual assault policy and is a certified holding facility under the Prison Rape Elimination Act (PREA). It has cameras in some cells but not in the cell where Chernyy was housed. Officers go through PREA training, and inmates are given a handbook during intake that outlines the jail's zero-tolerance policy and explains how to report inappropriate behavior.

Roesler was hired as a corrections officer in 2015. Like all new hires, he went through an 80-hour training course at the Nebraska Law Enforcement Training Center, which included PREA training. He testified that he knew he was prohibited from having physical relationships with inmates and that assaulting an inmate was illegal. Roesler was investigated in 2016 following a report that an inmate passed him a note. The note had hearts on it but no sexual content, and the investigation found that there was no improper relationship between Roesler and the inmate. Moore reprimanded Roesler for failing to report the note. A few months later, an

inmate alleged that Roesler made suggestive (but not sexually explicit) comments to her. The U.S. Marshals Service investigated and concluded that the allegations were unfounded and contradicted by video evidence.

Jail staff received two anonymous tips in October 2020 that Roesler had an "inappropriate relationship" with Chernyy. The same day, Chernyy reported that Roesler sexually assaulted her. Moore ordered an investigation and sent a social worker to check on Chernyy. When the allegations were confirmed that afternoon, Moore asked the Nebraska State Patrol to take over the investigation. He fired Roesler hours later, after the State Patrol confirmed the assault. Roesler pleaded guilty to sexual assault and was sentenced to 366 days imprisonment.

Chernyy sued Sheriff Moore in his individual and official capacity, alleging that he violated her Eighth Amendment right to be free from cruel and unusual punishment by failing to protect her and failing to train Roesler.[1] She also sued the County, claiming it is responsible for Moore's policy or custom of failing to protect inmates and inadequately training officers. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). The district court denied the defendants' motion for summary judgment.

"[U]nder the collateral order doctrine, we may conduct a limited interlocutory review of a district court's order denying summary judgment on the basis of qualified immunity." *Edwards v. Byrd*, 750 F.3d 728, 731 (8th Cir. 2014). We lack jurisdiction over questions of "'evidence sufficiency,' *i.e.*, which facts a party may, or may not, be able to prove at trial," *Johnson*, 515 U.S. at 313, but we may address the "purely legal" issue of "whether the facts alleged . . . support a claim of violation of clearly established law," *Mitchell v. Forsyth*, 472 U.S. 511, 528 n.9 (1985). In doing so, we ask whether the facts the district court found or assumed "'demonstrate

[1]Chernyy sued Roesler in his individual and official capacity for state law and constitutional claims. The individual capacity claims are not on appeal, and we treat the official capacity suit as a suit against the County. *See Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998) (explaining official capacity suit).

the deprivation of a constitutional or statutory right' and if 'the right was clearly established at the time of the deprivation.'" *Peterson v. Heinen*, 89 F.4th 628, 633 (8th Cir. 2023) (citation omitted).

To establish an Eighth Amendment claim for failure-to-protect, Chernyy must show that Moore "was deliberately indifferent to a 'substantial risk of serious harm.'" *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007) (citation omitted). This is a difficult standard to meet. *Joseph*, 144 F.4th at 1113. Deliberate indifference requires "conscious[] disregard" rising "to the level of criminal recklessness." *Dean v. Bearden*, 79 F.4th 986, 989 (8th Cir. 2023). "A risk of sexual assault is 'substantial' if it 'occur[s] with sufficient frequency that prisoners are put in reasonable fear for their safety.'" *Id.* (citation omitted).

Meeting the standard "is only half the battle." *Id.* Moore is entitled to qualified immunity unless he both "recognized that a substantial risk of harm existed *and* knew that [his] conduct was inappropriate in light of that risk." *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015) (quoting *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009)); *see also Joseph*, 144 F.4th at 1114 ("[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law." (citation omitted)). So even assuming Moore knew of a risk to Chernyy and "should have done more" to mitigate it, he is not liable unless "every reasonable official" in his position would have known his actions were insufficient to protect Chernyy. *Dean*, 79 F.4th at 989 (citation omitted).

Chernyy has not shown that it was clearly established that Moore's "conduct was inappropriate in light of [the] risk" she faced. *Letterman*, 789 F.3d at 862 (citation omitted). The district court relied on *Young v. Selk*'s statement that the Eighth Amendment "requires prison officials to 'take reasonable measures to guarantee' inmate safety." 508 F.3d at 871 (quoting *Farmer v. Brennan*, 511 U.S.

825, 832 (1994)).[2] But we do not define rights "at a high level of generality," and *Young* does not "involv[e] sufficiently similar facts that squarely govern[]" the situation here. *L.G. through M.G. v. Columbia Pub. Schs.*, 990 F.3d 1145, 1147–48 (8th Cir. 2021) (citation omitted); *see also Zorn v. Linton*, 146 S. Ct. 926, 931 (2026) (per curiam) (reversing judgment vacating the grant of qualified immunity where the court "failed to identify a case where an officer taking similar actions in similar circumstances 'was held to have violated' the Constitution" (citation omitted)). The inmate in *Young* alleged that he approached two officers two different times, told them he had been threatened by his cellmate, conveyed that his situation was urgent, and asked to be relocated. 508 F.3d at 870–71. We affirmed the denial of summary judgment because a reasonable jury could find the officers were deliberately indifferent when they chose to do nothing in the face of a known threat. *Id.* at 873–74. But Chernyy never expressed concerns about Roesler to Moore or to any other officer before to the sexual assault. And when she reported the incident, Moore took immediate action to investigate and intervene.

Chernyy cites *Riley v. Oak-Long*, 282 F.3d 592, 595 (8th Cir. 2002), as clearly establishing that Moore was deliberately indifferent.[3] The offending officer in *Riley* "had a history of predatory behavior throughout his employment at the prison" and was the subject of numerous complaints and inconclusive investigations. *Id.* at 594.

---

[2]The district court also noted "factual dispute[s]" that it thought prevented summary judgment: (1) that Moore decided not to install cameras in certain cells; (2) that Moore did not offer PREA training in 2017 and 2018; and (3) that Moore should have known Roesler was a threat to inmates based on his 2016 reprimand. We assume these facts are true, but they do not affect our finding that Moore is entitled to qualified immunity because he did not violate clearly established law.

[3]Chernyy also argues that "sexual assault is a clearly established violation of § 1983 in this Circuit as of December 14, 2002," citing *Kahle v. Leonard*, 477 F.3d 544 (8th Cir. 2007). Roesler's individual liability is not before us on appeal. And Chernyy's "'broad right' to protection from sexual assault . . . 'does not answer' the 'specific and particularized' question of whether" Moore's specific actions or inaction violated the Eighth Amendment. *Dean*, 79 F.4th at 991 (citation omitted); *see also Zorn*, 146 S. Ct. at 930 ("Principles stated generally . . . do not suffice.").

Two inmates accused the officer of sexual assault and "several other inmates had complained of being the target of [his] sexual advances." *Id.* His supervisors testified they knew of some misconduct, believed there was further misconduct, yet allowed the officer to continue interacting with female inmates. *Id.* at 596–97. *Riley* is distinguishable from the facts here. Roesler's one substantiated incident of misconduct in 2016—which involved an inmate passing him a note and did not involve sexual content or physical touching—showed less risk than the incidents in *Riley*, so it is not clearly established that the mitigating actions constitutionally required there were required here.

Moore is similarly entitled to qualified immunity for the failure to train claim because he did not violate any clearly established right "of which a reasonable person would have known." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citation omitted). "[A] supervisory officer is entitled to qualified immunity for a § 1983 failure to train action unless a reasonable supervisor would have known that his training program (or lack thereof) was likely to result in the specific constitutional violation at issue." *Id.*

Chernyy claims that Moore should have re-trained Roesler on PREA standards in 2017 and 2018. But without actual knowledge that an employee was likely to engage in sexual assault or notice of a pattern of unconstitutional acts, "a reasonable supervisor . . . would not know that a failure to specifically train [an officer] not to sexually assault a woman would cause [that officer] to engage in that very behavior," so Moore cannot be personally liable for his failure to do so. *Id.* at 1002–03; *see also Mitchell*, 160 F.4th at 961 (a failure to train claim requires that the supervisor "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury" (citation omitted)); *cf. Parrish*, 594 F.3d at 1002 ("[T]here is no patently obvious need to train officers not to sexually assault women.").

-6-

Chernyy counters that a reasonable jury could find Moore had notice of a pattern of unconstitutional acts committed by his subordinates. As pattern evidence, she points to Moore firing a different officer who was reportedly overheard kissing an inmate and giving her contraband a few months before Roesler assaulted her.[4] But "[a] single incident, or a series of isolated incidents, is usually insufficient to infer a pattern," and pattern evidence must be "sufficiently egregious" and "very similar to the conduct giving rise to liability." *Davis v. Buchanan County*, 11 F.4th 604, 624 (8th Cir. 2021) (cleaned up). The single incident Chernyy cites, involving a different officer committing different wrongful acts, is not enough to establish that a reasonable officer in Sheriff Moore's position would have known that his training was inadequate. *See McGuire v. Cooper*, 952 F.3d 918, 922–23 (8th Cir. 2020) (reversing denial of qualified immunity because fifteen complaints of sexual misconduct, but not assault, were not "not similar in kind or sufficiently egregious in nature" to create a pattern).

Even if Moore is not personally liable, Chernyy maintains that the County can be liable under *Monell* for maintaining a policy or custom of failing to protect inmates and inadequately training officers. We have jurisdiction over the County's liability to the extent it is "inextricably intertwined" with Moore's appeal, *Lockridge v. Bd. of Trs. of Univ. of Ark.*, 315 F.3d 1005, 1012 (8th Cir. 2003) (en banc) (citation omitted), meaning we can address it "if resolution of the qualified immunity claim necessarily resolves" the County's claim as well, *Muir v. Decatur County*, 917 F.3d 1050, 1053 (8th Cir. 2019) (cleaned up).

---

[4]Chernyy argues that Roesler's previous incidents—accepting the note and allegedly making inappropriate comments—are also pattern evidence. But she must allege a pattern of unconstitutional acts, *Mitchell*, 160 F.4th at 961, which these are not, *compare McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (verbal harassment is usually not actionable under § 1983), *with Seltzer–Bey v. Delo*, 66 F.3d 961, 962–63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexually explicit comments, and used nightstick to touch inmate's backside sufficiently stated a constitutional violation).

Our conclusion that Moore did not violate any clearly established constitutional right necessarily resolves the County's liability. "Where a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by policymakers." *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 390 (8th Cir. 2007) (en banc). And then, a municipality is only liable where its "failure to adopt adequate safeguards was the product of deliberate indifference to the constitutional rights of its inhabitants." *Id.* "The absence of clearly established constitutional rights . . . undermines the assertion that a municipality *deliberately* ignored an *obvious* need for additional safeguards" and "precludes a finding that the municipality had an unconstitutional policy." *Id.* at 394. After all, a municipality's "policymakers cannot properly be said to have exhibited a policy of *deliberate* indifference to constitutional rights that were not clearly established." *Id.*

Chernyy says that Moore was the County's policymaker and adopted an unconstitutional policy or custom of not protecting inmates and inadequately training officers. Our finding that Moore—in his individual capacity—did not violate any clearly established right precludes a finding that the County—via Moore in his official capacity as its policymaker—exhibited deliberate indifference, so the County too is entitled to summary judgment. *See id.* at 393–94 (without a violation of clearly established law, the need for training is "not so obvious . . . that [the municipality's] actions can properly be characterized as deliberate indifference" and municipal liability fails as a matter of law); *see also Dundon v. Kirchmeier*, 85 F.4th 1250, 1257–58 (8th Cir. 2023) (same).

Chernyy's motion to dismiss the appeal for lack of jurisdiction is denied. We reverse and remand for the entry of summary judgment in favor of Sheriff Moore and Morton County.

_____